# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON SOLOMON,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 1:17-cv-01763-SAB<br><br>ORDER GRANTING IN PART PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 17, 20, 21) |

## I.

## INTRODUCTION

Plaintiff Sharon Solomon ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from anemia, upper respiratory tract infection, affective disorders, carpal tunnel syndrome, scleroderma, degenerative disc disease of the lumbar spine, right shoulder arthritis, left shoulder arthritis, cervical disc disorder with radiculopathy, and motor seizures.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 7, 8.)

1

For the reasons set forth below, Plaintiff's Social Security appeal shall be granted in part.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff has previously filed applications for benefits. On June 4, 2012, a decision issued finding that Plaintiff retained the residual capacity to perform light work and was not disabled. (AR 163-175.) Plaintiff protectively filed a Title XVI application for supplemental security income on January 22, 2013. (AR 196.) Plaintiff's application was initially denied on August 26, 2013, and denied upon reconsideration on March 13, 2014. (AR 244-248; 250-255.)

Plaintiff protectively filed the instant Title XVI application for supplemental security income on May 21, 2014. (AR 243.) Plaintiff's application was initially denied on October 1, 2014, and denied upon reconsideration on April 28, 2015. (AR 256-260, 268-271.) Plaintiff requested and received a hearing before Administrative Law Judge Scot Septer ("the ALJ"). Plaintiff appeared for a hearing on February 24, 2017. (AR 33-81.) On April 3, 2017, the ALJ found that Plaintiff was not disabled. (AR 12-24.) The Appeals Council denied Plaintiff's request for review on October 24, 2017. (AR 1-3.)

### A. Relevant Hearing Testimony

Plaintiff appeared with counsel and testified at a hearing on February 24, 2017. (AR 41-71.) Plaintiff lives in a single-story duplex with her nephew who is there in case she has seizures. (AR 41.) Her nephew works for UPS during the day. (AR 42.) Plaintiff has three adult children. (AR 42.) She sees her children every other day. (AR 42.) Plaintiff is not married. (AR 42.) Plaintiff completed eleventh grade. (AR 52.)

Plaintiff is 5 feet 3 inches tall and weighs 110 pounds. (AR 42.) She is right-handed. (AR 42.) Plaintiff receives $212.00 in general relief. (AR 43, 54.) She did work for Fresno Area Vocational Options taking care of disabled people for a couple of months in 2002. (AR 43-44.)

Plaintiff's condition has gotten worse since she got the decision in 2015. (AR 44.) She has seizures. (AR 45.) She had a seizure a couple days ago, but did not go to the doctor because they would take her license away from her and she only has seizures when she is asleep. (AR

44-45.) She had a seizure on Thanksgiving of the prior year. (AR 45.) She went to the hospital at that time but they did not give her anything for her seizures. (AR 45.) Plaintiff does not log her seizures. (AR 45-46.) Her prior seizure before that was around June. (AR 46.) All of her seizures happen at night when she is asleep. (AR 47.) She will wake up and know that she cannot do anything about it so she just lays there. (AR 47.) She will wake up and know that she is going to have a seizure so she just lays down. (AR 47.)

Plaintiff wears braces on her wrists. (AR 47.) They get stuck sometimes and her fingers spread out. (AR 47.) It is something like a spasm. (AR 47.) It happens once a week. (AR 48.) Cold may bring it on; she is anemic and her hands are cold. (AR 48.)

She has pain in her right shoulder. (AR 48.) It feels like someone is drilling something on her back. (AR 48.) During the hearing, Plaintiff stated that she was experiencing pain of 10 out of 10. (AR 49.) She experiences pain of 10 out of 10 every day. (AR 49.) This has been occurring for over 10 years. (AR 49.) It has gotten worse over the years. (AR 49.) She had surgery scheduled for her shoulder on March 28. (AR 49.) She has two separate issues with her shoulders. (AR 63.)

Plaintiff has a pinched nerve in her neck. (AR 49.) The doctor told her that after the surgery they would do something for her neck if it is still hurting. (AR 50.) Plaintiff has not had any recent treatment for her neck. (AR 50.) Plaintiff's discs are also messed up. (AR 62.) The neck pain also causes pain in her right side down into her legs and calves. (AR 62.) Plaintiff has carpal tunnel syndrome and arthritis. (AR 50.) Plaintiff has numbness and burning in her arms. (AR 62.) She has pain all over. (AR 50-51.) Her mouth was hurting during the hearing. (AR 51.) Her pain is up and down her body. (AR 51.) It starts tingling down her legs and her legs get tight. (AR 51.) This happens two to three times a week. (AR 51.) She will take a hot bath in the tub. (AR 51.)

Plaintiff takes Gabapentin but it does not really work to manage her pain. (AR 51-52.) She does not get any relief from the pain. (AR 52.) She has received injections but they do not relieve the pain as long as she thinks that it should. (AR 52.) The longest relief she receives is a week, but they are supposed to last thirty days. (AR 52.) The shortest relief she will receive is a

single day. (AR 52.) Plaintiff used to take Dilantin for her seizures. (AR 60.) But the doctor took her off the Dilantin and told her to take Gabapentin for her seizures and her back. (AR 60.)

Plaintiff has been going to pain management since April 2015. (AR 63.) She gets injections for her shoulder and back. (AR 64.) She got a shot at Sierra Orthopedic that lasted a month. (AR 64.) Plaintiff also has a burning sensation in her feet since 2012. (AR 65.) The sensation has gotten worse and happens two to three days per week. (AR 65.) It happens during the day and lasts for about an hour. (AR 65.) On bad days, Plaintiff is unable to do anything. (AR 65-66.) She will stay in bed and her sister will come over after getting off work and move her to the living room. (AR 66.) When her nephew gets home, he will ask Plaintiff if she wants to stay in the living room or go lay down. (AR 66.) She has bad days seven to eight times a month. (AR 66.) Sometimes Plaintiff is able to wash dishes, make food, or hold a cup without difficulty due to her hands. (AR 66-67.) When her arthritis kicks up or her hands get cold she will have problems. (AR 67.) Plaintiff is anemic and gets blood transfusions and they give her vitamin C and D. (AR 67.) She also has numbness in her hands. (AR 67.) She cannot do things when she has the numbness in her hands. (AR 67.) She has hand numbness two to three days per week. (AR 68.) The numbness comes and goes. (AR 68.) The numbness especially happens in the morning because it is cold. (AR 68.) She will leave her bed and go to the living room once the house warms up. (AR 68.) The numbness will go away then. (AR 68.) Plaintiff sits down three times a day. (AR 69.) She will lie or recline when she is in the living room. (AR 69.) On a good day, Plaintiff will wash the dishes, sit on the couch, watch some sports, and get a Pepsi. (AR 70.) Plaintiff has had to recline for more than five years. (AR 70.)

Plaintiff buys a lot of frozen food or her nephew will cook. (AR 53.) Plaintiff knows how to cook but sometimes her hands ache or she is not in the mood to cook. (AR 53.) Plaintiff vacuums but most of the time her nephew does the heavy cleaning. (AR 53.) Plaintiff's sister goes shopping for her. (AR 53.) Plaintiff does her laundry and then her sister will come over and sit with her for a couple hours. (AR 53-54.) They do the laundry together. (AR 54.) Plaintiff does a little cleaning and stuff. (AR 54.)

Plaintiff can drive but does not have a car. (AR 54.) She has not driven in a while but

she does have a license. (AR 54.) She last drove two years ago. (AR 54.) Plaintiff does not have a savings or checking account. (AR 54.) Plaintiff does her physical therapy exercises at home. (AR 55.) She lays on her back and lifts her legs up. (AR 55.) Once she is finished she is back to her same old way. (AR 55.) She hurts so she does the exercises and feels good as long as she is doing them. (AR 55.) But as soon as she stops she is hurting again. (AR 55.) She has not been going to physical therapy since she found out about her other issue. (AR 56.) She has gone to physical therapy for a lot of years, different therapists, different locations. (AR 56.) She has a TENS unit that helps but she can only use it ten minutes and then has to let it rest. (AR 56.) It helps while she is using it. (AR 57.) None of the exercises the therapists have given her have helped. (AR 57.) She went to a chiropractor who popped her back. (AR 59.) He massaged her and it helped. (AR 59.) One day she went and he told her that he would not see her again until they figured out what was wrong with her. (AR 59.) She last went a couple months ago. (AR 59.)

If Plaintiff is having a lot of pain she will get up around 6:00 in the morning. (AR 57.) She walks around and then goes to sit on the couch. (AR 57.) She will go and get something to eat. (AR 57.) Plaintiff will go back to bed because she has an electric blanket and she does not want to run the heater in her apartment. (AR 57.) The heat helps to ease her leg symptoms. (AR 58.) Plaintiff walks because she knows that she needs to walk to keep from getting stiff. (AR 58.) Her sister will take her when she needs to go somewhere. (AR 58.) She will have problems riding in the car for long periods of time. (AR 58.) She has to adjust to get comfortable. (AR 58.)

Plaintiff cannot pick up a gallon of milk. (AR 59.) It is too heavy and she cannot get a good grip with her hands. (AR 59.) Plaintiff can pick up a glass of water or a can of soda. (AR 59.) She does not drink them cold, but hot. (AR 60.)

Plaintiff is unable to work because she hurts all the time. (AR 61.) She is not able to sit very long. (AR 61.) Her back and shoulder ache. (AR 61.) Her neck and back hurt and she cannot work because of her seizures. (AR 61.)

Jose L. Chaparro, a vocational expert, also testified at the hearing. (AR 71-78.)

1 **B.     ALJ Findings**

The ALJ found that the prior denial was res judicata for the period before June 4, 2012. (AR 15.) However, Plaintiff had presented evidence of changed circumstances, and therefore the presumption of continuing non-disability did not apply to the period beginning June 5, 2012. (AR 15.) The ALJ made the following findings of fact and conclusions of law.

- Plaintiff has not engaged insubstantial gainful activity since the application date of May 21, 2014.
- Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, right shoulder arthritis, left shoulder arthritis, cervical disc disorder with radiculopathy, and motor seizures.
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.
- Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 416.967b except she can occasionally climb ladders, ropes, scaffolds, ramps, and stairs; and occasionally balance, stoop, kneel, crouch, and crawl. Plaintiff is also limited to no more than frequent overhead bilateral reaching. and should not have exposure to unprotected heights or machinery and moving mechanical parts.
- Plaintiff has no past relevant work.
- Plaintiff was born on March 14, 1972, and was 42 years old, which is defined as a younger individual age 18-49, on the date the application was filed.
- Plaintiff has a limited education and is able to communicate in English.
- Transferability of job skills is not an issue because Plaintiff does not have past relevant work.
- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.
- Plaintiff has not been under a disability as defined in the Social Security Act since May 21, 2014, the date the application was filed.

(AR 17-24.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 416.920; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v.

Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff alleges that the ALJ erred by finding her carpal tunnel to be non-severe at step 2; failing to provide clear and convincing reasons to reject her testimony; and failing to provide germane reasons to reject the lay witness testimony of Tammie Solomon.

### A. Step Two Finding

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.' " Smolen, 80 F.3d at 1290 (citations omitted). Step two is a "de minimis screening devise to dispose of groundless claims." Id. An ALJ can only find that claimant's impairments or combination of impairments are not severe when his conclusion is clearly established by medical evidence. Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting S.S.R. 85-28). In considering an impairment or combination of impairments, the ALJ must consider the claimant's subjective symptoms in determining their severity. Smolen, 80 F.3d at 1290.

Here, at step two, the ALJ considered that Plaintiff had nerve conduction studies in July 2015 that indicated minimal median neuropathies at the bilateral wrists and that Dr. Birnbaum opined it was doubtful that these findings explained her hand symptomology. (AR 18, 1009, 1015.) The ALJ also noted that Plaintiff wears hand braces for her carpal tunnel syndrome. (AR 18, 536.) The ALJ found that Plaintiff's carpal tunnel syndrome did not cause more than minimal restriction in Plaintiff's ability to work and was not severe. (AR 17.)

Plaintiff contends that this was error relying on Webb, 433 F.3d at 687, and Ortiz v. Comm'r of Social Sec., 425 F.App'x 653, 655 (9th Cir. 2011), to argue that there was not a complete lack of evidence to affirm the non-severe finding at step two. However, both Webb and Ortiz are distinguishable from the current matter because the ALJ in those cases made a finding of non-disability at step two and did not continue in the sequential steps of the evaluation process. See Webb, 443 F.3d at 686 (ALJ stopped analysis at step two after finding the claims did not have a medically severe impairment or combination of impairments); Ortiz, 425 F.App'x at 654 (Claimant's application was denied at the second step of the five-step sequential evaluation process.). Any error in failing to find impairment severe at step two is harmless where the ALJ considers the limitations posed by the impairment in the step four analysis. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007). Here, the ALJ went on to consider Plaintiff's carpal tunnel syndrome and symptoms in assessing her residual functional capacity.

The ALJ considered that Plaintiff testified that she has episodes where her hands get stuck with her fingers spread out once a week. (AR 20, 47-48.) Plaintiff testified that she cannot lift a gallon of milk; she does not have a good grip; sometimes she can use her hands without difficulty and sometimes her arthritis acts up; cold worsens her arthritis; and she has numbness in her hands two or three days per week. (AR 20, 50, 59, 66-67, 68.) The ALJ found that Plaintiff's had only mild objective findings with regard to her carpal tunnel syndrome and wears wrist braces. (AR 20.)

The ALJ considered the consultative examination of Plaintiff in July 2013 by Dr. Rush in which Plaintiff had excellent grip strength in both hands. (AR 22, 510.) Her motor strength was 5/5 in the upper and lower extremities, sensation was normal, and reflexes were 2+. (AR 22,

510.) Dr. Rush found that Plaintiff had no restrictions in lifting or carrying or in any other work related physical functioning. (AR 22, 510.) Specifically, Dr. Rush opined that Plaintiff had no restrictions in use of the hands for fine and gross manipulative movements. (AR 510.)

The ALJ also considered the consultative examination of Plaintiff in September 2014 by Dr. Rios. (AR 22, 516-520.) Plaintiff reported that she experienced pain in her wrists with numbness in her second and third digit. (AR 22, 516.) Plaintiff was able to pick up objects off the table and bend down and pick up her phone when it fell on the floor without any hesitancy. (AR 517.) Plaintiff had negative Tinel's and Phalen's signs in both wrists and grip strength was 4+/5. (AR 22, 519.) Plaintiff was capable of opposing her thumb with the rest of her fingers, and fine and gross motor finger manipulation was intact. (AR 22, 519.) Motor strength was 5/5 in the upper and lower extremities, except for grip strength; sensation was intact; and reflexes were 2+ in the upper and lower extremities. (AR 22, 519.) Dr. Rios diagnosed Plaintiff with carpal tunnel syndrome, degenerative disc disease, and a seizure disorder. (AR 22, 519.) Dr. Rios stated, "Examination of both wrists revealed negative Tinel's sign but she describes carpal tunnel symptoms with radiation in the second and third digit. She is wearing a wrist brace." (AR 519.) As relevant here, Dr. Rios opined the Plaintiff could lift and carry 20 pounds occasionally, and 10 pounds frequently. (AR 22, 520.) Dr. Rios opined that Plaintiff could perform frequent reaching, fingering, and feeling, and occasional handling. (AR 520.) The ALJ gave Dr. Rios' opinion some weight, but found that the overall evidence does not substantiate fingering, feeling, and handling limitations, particularly the minimal electrodiagnostic findings. (AR 23.)

The ALJ gave significant weight to the opinions of agency physicians Dr. Bugg and Dr. Mitchell who opined that Plaintiff had no manipulative limitations, but found that a restriction to no more than frequent overhead bilateral reaching was warranted by Plaintiff's shoulder symptoms and that a restriction on exposure to unprotected heights and machinery was sufficient as Plaintiff's seizures only occur during sleep. (AR 23, 222-223, 239-240.)

Plaintiff argues that she was prescribed a wrist brace as early as April 2013, however the ALJ considered that Plaintiff used a wrist brace for her complaints of wrist pain. Plaintiff also

10

argues that on January 19, 2016, Plaintiff was diagnosed with rheumatoid arthritis in multiple sites by Dr. Gill, (AR 941), however, a diagnosis alone is insufficient to establish disability. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability.") Dr. Gill saw Plaintiff on January 19, 2016. (AR 940-941.) Plaintiff complained of joint pain all over her body including her upper and lower extremities, hands, knees, and feet. (AR 940.) Musculoskeletal examination notes no active synovitis. (AR 941.) Plaintiff was diagnosed with rheumatoid arthritis without rheumatoid factor, multiple sites; polyarthritis, and localized scleroderma. (AR 941.)

Dr. Gill saw Plaintiff on December 17, 2015, and she denied having pain in her hands. (AR 950.) Musculoskeletal examination revealed no active synovitis and 5/5 upper and lower extremity strength with no sensory loss. (AR 951.) Plaintiff had a follow up visit with Dr. Gill on February 19, 2016, reporting that her joint pains were much better after cortisone injection, and examination findings were the same. (AR 934-935.) Further visits continue to record the same findings. (AR 925, 931.)

Plaintiff has not challenged the weight provided to the physician opinions by the ALJ nor has Plaintiff cited to objective medical evidence in the record demonstrating that the ALJ's findings were in error. The court finds that any error at finding Plaintiff's carpal tunnel to be non-severe at step two would be harmless as the ALJ continued on and considered Plaintiff's carpal tunnel and hand complaints at step four of the sequential analysis. Lewis, 498 F.3d at 911.

**B.     Claimant Testimony**

Plaintiff also contends that the ALJ erred in rejecting her symptom testimony. "An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain

11

or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that her impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

Then "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Brown-Hunter v. Colvin, 806 F.3d 487, 488–89 (9th Cir. 2015). "The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted). Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. Lingenfelter, at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . .." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284). The district court is constrained to review those reasons that the ALJ provided in finding the claimant's testimony not credible. Brown-Hunter, 806 F.3d at 492.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision. (AR 20.) The ALJ found that the treatment record indicated improved joint pain with injections and that

Plaintiff does not experience daytime seizures. (AR 20.) Plaintiff also gets relief from pain with medication. (AR 20.) The ALJ also found that here are only mild objective findings with regard to carpal tunnel syndrome and Plaintiff performs a wide range of daily activities. (AR 20.)

        1.        Daily Activities

There are two grounds to use daily activities for an adverse credibility finding. Orn, 495 F.3d at 639. First, daily activities can form the basis of an adverse credibility determination if the claimant's activity contradicts her testimony. Id. Secondly, "daily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.' " Id. (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). The ALJ must make specific findings as to the daily activities and their transferability to conclude that the claimant's daily activities warrant an adverse credibility determination. Orn, 495 F.3d at 639.

Here, the ALJ stated that Plaintiff performs a wide range of daily activities. (AR 20.) However, as noted in the opinion, Plaintiff testified that she has seven to eight bad days a month where she needs help to get to the living room. (AR 20, 65-66.) Plaintiff testified that she has frozen food and does not cook very often. (AR 20, 53.) Her nephew does the cooking and cleans the bathroom. (AR 20, 53.) She does laundry with the help of her sister. (AR 20, 53-54.) She has not driven in two years. (AR 20, 54.) She does her physical therapy exercises at home. (AR 20, 55.) She can sit three times a day. (AR 20, 69.) Plaintiff washes dishes, vacuums, and watches sports. (AR 20, 53, 70.) Plaintiff testified that on a good day she will wash the dishes, sit on the couch, watch some sports, and get a Pepsi. (AR 70.)

The ALJ did note that in 2014 Plaintiff participated in physical therapy and on discharge was walking to the store every day. (AR 21.) On review of the physical therapy records. At the initial evaluation on October 3, 2014, Plaintiff did state that she walked to the store every day. (AR 716.) The record did note that Plaintiff was moderately compliant with treatment. (AR 718.) Plaintiff attended five sessions with three cancellations. (AR 737.) On discharge, Plaintiff did report that she continued to walk daily to the store and had not increased or decreased her walking activity. (AR 737.) At the February 24, 2017 hearing, Plaintiff did state that she has

continued to walk. (AR 57.)

Defendant argues that Plaintiff's symptom complaints were not consistent with her allegations of disabling pain. However, the ALJ did not identify any activity that contradict Plaintiff's testimony regarding her daily activities. The Court finds that the ALJ's finding that Plaintiff engages in a wide range of daily activities is not a clear and convincing reason to support an adverse credibility finding.

2. <u>Improvement with Treatment</u>

The ALJ found that the treatment record indicated the Plaintiff had improved joint pain with injections and relief from pain with medication. (AR 20.) In making this finding, the ALJ cited an October 26, 2016 visit with Dr. Ky in which Plaintiff reported her pain as 5/10. (AR 769.) She reported moderate pain relief that lasted one week after receiving an injection in her right shoulder. (AR 769.) She also reported that she receives moderate pain relief with her gabapentin, and is having less muscle spasms with baclofen. (AR 769.) The ALJ also noted that in 2014, Dr. Leroy recorded that Plaintiff seems to do well on Baclofen, Norco, and gabapentin noting that she can stand on her heels and toes without the use of a handhold and has a full appreciation to light touch sensation from the L2 through S2 dermatomes. (AR 20, 538.)

While Plaintiff did report that her pain level had decreased from 8-10/10 to 5-6/10 with the injections, (AR 642, 682, 697, 703, 759, 768, 826), Plaintiff continued to complain that she was only receiving short term relief from the injections lasting from three hours to several weeks, (AR 643, 655, 669, 760, 769, 789, 827). Further, Dr. Ky noted an awkward slow gait and objective findings on examination of her spine continued to show limited range of motion which decreased even with the injections. (AR 644-645, 656-567, 684, 699, 706, 770, 828.) On September 22, 2016, Dr. Ky noted that Plaintiff got good response with DMARD's except for back and shoulder pain. (AR 925.)

The Court finds that the ALJ's finding that Plaintiff improved with medication is not a clear and convincing reason to reject Plaintiff's symptom testimony.

3. <u>Inconsistency with Medical Record</u>

Defendant argues that while Plaintiff asserts that she is unable to work due to her

seizures, she only has seizures at night while sleeping, and she reported no symptoms with her most recent seizure. Also, Plaintiff most recently stated that she had not had a seizure in more than six months and she has not sought treatment for her seizures. Defendant argues that these findings are inconsistent with Plaintiff's inability to work due to seizures. However, Plaintiff also alleged that she was unable to work due to pain.

The ALJ found that Plaintiff testified that she has episodes where her hands get stuck once a week, she cannot lift a gallon of milk and does not have good grip strength, and is sometimes able to use her hands without difficulty but sometimes her arthritis acts up. (AR 20.) Plaintiff testified that she had numbness in her hands two to three days a week. (AR 20.) The ALJ rejected Plaintiff's testimony regarding her hand symptoms finding that she had only mild objective findings with regard to carpal tunnel syndrome. (AR 20.)

The ALJ cannot discredit Plaintiff's pain testimony solely because it is found not to be supported by the objective medical evidence. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)); Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991). As discussed above, the Court finds that the other reasons that the ALJ gave for discrediting Plaintiff's testimony besides the inconsistencies with clinical evaluations and objective medical evidence are not clear and convincing reasons to discredit her testimony. Therefore, even if there is substantial evidence to support the ALJ's finding that the clinical evaluations and objective evidence are inconsistent with Plaintiff's complaints, the ALJ could not properly reject Plaintiff's testimony on this reason alone. See Bunnell, 947 F.2d at 347.

Defendant argues that although Plaintiff testified that she experienced pain at 10/10 every day and frequently complained of pain of 10/10, there are notations that she was able to move around the examination room with minimal difficulty and did not need an assistive device to walk. (AR 49, 517, 519.) Defendant argues that the ALJ properly found that her symptom testimony was inconsistent other medical evidence in the record. Although there is evidence in the record that is inconsistent with Plaintiff's testimony regarding the severity of her pain, (AR 509, 779, 798, 804, 848, 909, 859, 985), the ALJ did not provide this as a reason to reject her testimony. While the Court may draw reasonable inferences from the ALJ's opinion,

1 Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989), it cannot consider Defendant's post hac rationalizations. "A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency." Ceguerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991).

If on remand, the ALJ provides other clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's testimony, then the inconsistencies with objective evidence and clinical evaluations may be a proper reason for rejecting Plaintiff's credibility.

### C. Lay Witness Testimony

Plaintiff contends that the ALJ failed to provide germane reasons to reject the testimony of her sister, Tammie Solomon. Defendant argues that the ALJ provided a germane reason to reject Tammie Solomon's testimony and that even if the reason provided is not germane, it would be harmless error because the ALJ provided appropriate reasons to reject Plaintiff's testimony. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout, 454 F.3d at 1053; 20 C.F.R. § 416.913(a)(4). "Lay witness testimony is competent evidence and cannot be disregarded without comment." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)). The ALJ must give specific reasons germane to the witness in discounting the lay witness testimony. Stout, 454 F.3d at 1056.

The ALJ considered a third-party function report completed on February 9, 2015, by Tammie Solomon. (AR 21-22, 447-455.) She reported that Plaintiff experienced chronic back pain, carpal tunnel syndrome in both hands, seizures, fluid on the brain, and a left arm deformation. (AR 22, 447.) Tammie Solomon also reported that Plaintiff needed help with personal care, did not prepare meals, and did not perform housework, but she shopped in stores, was able to manage her finances, watched sports daily, and spent time with others. (AR 22, 448-451.) Tammie Solomon reported that Plaintiff's condition affected her ability to lift, bend, reach, kneel, climb stairs, complete tasks, and use her hands. (AR 22, 452.) She also stated that Plaintiff could walk for 15 minutes before needing to rest for about 5 minutes, and she could pay attention and follow instructions. (AR 22, 452.) The ALJ found that Tammie Solomon's report

contains overstatements in comparison to the record as a whole. (AR 22.)

Although the ALJ stated that Tammie Solomon's report contains overstatements, he did not identify what those overstatements were nor the portions of the record that would demonstrate an overstatement. Because the ALJ failed to identify what overstatements were contained in the report and which portions of the record contradicted the testimony, the ALJ did not meet his responsibility to provide "'the reason or reasons upon which' his adverse determination is based." Brown-Hunter, 806 F.3d at 492 (citations omitted).

Defendant argues that the failure to provide germane reasons to reject Tammie Solomon's testimony would be harmless error because the ALJ provided valid reasons to reject Plaintiff's testimony. If the ALJ gives reasons for rejecting the claimant's testimony that are equally relevant to similar testimony provided by lay witnesses, that would support a finding that the lay witness testimony is similarly not credible. Molina, 674 F.3d at 1114. However, the Court has found that the ALJ failed to provide clear and convincing reasons to reject Plaintiff's testimony. Therefore, the failure to provide germane reasons to reject Tammie Solomon's testimony cannot be found to be harmless error.

**D.     Remand to the Agency is Appropriate**

Plaintiff seeks to have this action remanded for further proceedings. "[A] reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony." Brown-Hunter, 806 F.3d at 495 (quoting Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1106 (9th Cir.2014)). Here, although the ALJ erred in providing valid reasons to reject Plaintiff's symptom testimony and lay witness testimony, there is significant evidence in the record that Plaintiff's pain is not as severe as she contends. (AR 509, 779, 798, 804, 848, 909, 859, 985.) In this instance, an evaluation of the record as a whole creates serious doubt that Plaintiff is, in fact, disabled. Garrison v. Colvin, 759 F.3d 995, 1021 (9th Cir. 2014). The Court finds that it is appropriate to remand this matter for further consideration of Plaintiff and the lay witness testimony.

/ / /

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in evaluating Plaintiff's hand limitations. However, the ALJ did err in evaluating the testimony of Plaintiff and Tammie Solomon.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED and this matter is remanded back to the Commissioner of Social Security for further proceedings consistent with this order. It is FURTHER ORDERED that judgment be entered in favor of Plaintiff Sharon Solomon and against Defendant Commissioner of Social Security. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: __**December 5, 2018**__

UNITED STATES MAGISTRATE JUDGE